MICHAEL L. MALLOW (SBN 188745)
mmallow@loeb.com
MICHAEL A. THURMAN (SBN 123303)
mthurman@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendants
LIGHTS OF AMERICA, INC., USMAN VAKIL
and FAROOQ VAKIL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTS OF AMERICA, INC., a California corporation; USMAN VAKIL, an individual; and FAROOQ VAKIL, an individual,<br><br>Defendants. | Case No.: SACV10-01333 JVS MLGx<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS AGAINST FTC**<br><br>**[REDACTED VERSION]**<br><br>Hearing Date: January 18, 2012<br>Hearing Time: 8:00 a.m.<br>Courtroom:    10C<br>Judge:           Hon. James V. Selna<br><br>Discovery Cutoff: November 14, 2011<br>Pretrial Conf.:      May 7, 2012<br>Trial Date:           May 22, 2012 |

Since 2004, it has been the FTC's policy to auto-delete from its computer servers every night at 3:00 a.m. any email communications more than 45 days old that the individual user does not affirmatively move to a protected archived folder. (November 23, 2011 Shortnacy Decl., Exh. O.) The stated purpose of this policy was to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC

████████████████████████████████████████
████████████████████████ *Id.* (Emphasis added.) It is against this backdrop that the FTC admittedly waited to first implement a litigation hold in this action until one year after it started its full phase investigation of Defendants, and some eight months after it issued a Civil Investigative Demand ("CID") to Defendants demanding that **they** immediately preserve all relevant documents and information. Even then, the FTC left key players out of the litigation hold, failed to ever advise the agencies on which it was relying to assist in conducting its investigation of any duty to preserve, and never suspended the auto-delete policy. Taken together, these facts, which the FTC does not deny but rather attempts to explain or justify through declarations replete with qualifiers, hedging, and incompetent testimony, provide this Court with ample basis to sanction the FTC's serious discovery lapses.

**The FTC's Duty to Preserve**

The FTC argues (Joint Stip. at 12) that litigation in this case did not become "probable" until April 30, 2010, when the Bureau Director granted settlement authority. The FTC also argues that litigation with Defendants could not have been "reasonably foreseeable" in April 2009 when the FTC opened its full investigation (because, in general, many investigations do not uncover "law violations"), nor in September 2009 when the FTC issued the CID, (because, on "numerous occasions", CID's do not result in litigation). (*Id.* at 13; Kaye Decl. ¶¶ 4-6.)

The FTC, however, misses the mark. First, the standard for determining when the duty to preserve arises includes situations where the party "should have known" evidence may be relevant to a future litigation. *Cyntegra, Inc. v. Idexx Labs., Inc.*, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007). This is especially true here, where, as Plaintiffs, the FTC controlled the decision and timing of whether and when litigation was to be commenced. Second, whether some investigations or CID's generally conclude without litigation is of no moment.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

2

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC

Rather, it is the facts of this case that control the inquiry.[1] Indeed, it is telling that while the FTC goes through the trouble of submitting four declarations from its lead attorneys, investigator, and its Assistant Director of Enforcement, only one of the declarants, Mr. Kaye, even touches upon this issue. Kaye, however, curiously limits his testimony to vagaries and generalities and says nothing about what **actually** happened in the decision making process of opening the investigation or issuing the CID **in this case**. Significantly, the FTC also fails to offer any evidence that it followed its own litigation hold procedures (Nov. 23, 2011 Nelson Decl., Exh. X at 8, ¶ 2(a); Exh. Y at 10, ¶ 2(a).), which █████████████████████████████████████████████████████████████████████████

The only evidence before the Court about the timing of when the FTC actually thought that litigation in this case was likely comes from the FTC's privilege log claiming attorney work-product protection over emails and drafts created in "anticipation of litigation" at the time the investigation was opened, and when the CID was issued. The FTC's explanation that the log has since been amended and the assertions of protection have since been withdrawn is particularly frail given the timing of the amendment and withdrawal -- directly following Defendants first raising the issue of the FTC's failure to timely implement a litigation hold.

Simply put, the FTC should have known as early as its **full** investigation was launched -- but certainly no later than when it issued the CID -- that its documents and materials, and those of its expert PNNL, would likely be relevant to future litigation. Its failure to do so here for months (and years, in the case of its first lead attorney and investigator) constitutes the kind of grossly negligent conduct that

---

[1] And, here, the evidence shows that as early as September 2009 the Department of Energy communicated to the FTC the DOE's belief that "It is clearly no longer just a question of [Defendants'] output claims, but clearly false claims regarding product life." (Shortnacy Decl., Exh. L.)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

3

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC

courts have found to independently support an adverse inference sanction. *See, e.g., Housing Rights Center v. Sterling*, 2005 WL 3320739, at *8 (C.D. Cal. Mar. 2, 2005) (adverse inference sanction for "sluggishness" even where specific acts not ultimately responsible for the unavailability of evidence); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Once a duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

### The FTC's Claim that All Relevant Material Was Preserved Or Is Available From Other Sources Is Not Reliable

Arguing that it did not act with culpability and that Defendants have suffered no prejudice -- even if the FTC's duty to preserve arose earlier than April 2010 -- the FTC claims that there is no harm because all of the key custodians "always" preserved all "relevant" material.[2] (Joint Stip. at 14-16.) Read together, the very carefully worded, and sometimes incompetent, declarations of the FTC custodians and the FTC's PNNL expert, however, should give the Court no comfort that relevant material was not lost in the absence of a litigation preservation hold.

For example, the FTC's lead attorney from April 2009 to September 2009, who was not placed on litigation hold until **May 2011**, states only that it was her "practice" to preserve "relevant" emails by placing them in an archive folder. (Mack Decl. ¶ 4.) Ms. Mack does not define her understanding of "relevant", which is a critical understanding given that the FTC's position is that it was not reasonable to expect litigation with Defendants until April 2010. Nor does she exclude the possibility that she may have varied from her general practice. More importantly, Ms. Mack refrains from claiming that she forwarded to her replacement attorney, Ms. Spector, **all** of the emails that she did preserve, stating only that she forwarded "numerous" such emails in September 2009. (*Id.*)

---

[2] The testimony of the FTC custodians that they always preserve every relevant email is also contrary to FTC policy, which counsels that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nelson Decl., Exh. X at 77; Exh. Y at 64.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

4

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC

Ms. Spector's declaration is equally equivocal, stating only that she kept "relevant" (without defining the term, or providing a timeframe) emails that she "received" from (but apparently not the ones she <u>sent</u> to) DOE and PNNL. (Spector Decl. ¶ 4.)

Mr. Newsome, an FTC attorney responsible for developing regulations for energy information labels, and who was apparently the first person at the FTC to be advised about LOA's packaging, also equivocates. He declares only that it was his "practice" to "provide" (in an unknown format) emails with DOE and PNNL to Ms. Mack, Ms. Spector, or the unidentified "current trial counsel" -- "**unless they also sent or received the email.**" (Newsome Decl. ¶ 4) (emphasis added).

Finally, the FTC's expert from PNNL testifies only that she preserved those emails between PNNL, DOE and FTC that she deemed "substantive and/or relevant to CALIPER project activities at PNNL." (Paget Decl. ¶ 6.) She also states that in January 2011 she produced "from her desktop" "all existing records" responsive to Defendants' FOIA request, because she was "in custody and possession of all then existing email and correspondence between PNNL and the FTC...including those related to 'LOA.'" (*Id.* at ¶ 8.) This claim however, is demonstrably false as there are numerous emails from Ms. Paget to the DOE that were produced by DOE pursuant to Defendants' FOIA request, but were not produced by Ms. Paget. (*See* Exhs. A and B, attached.)

**Defendants Have Suffered Prejudice**

The foregoing declarations show that the preservation efforts of the FTC and its expert PNNL are woefully incomplete, and leave ample room for relevant documents to have been lost. Given the FTC's grossly negligent conduct, and the fact that there is no way to know the content of the missing material, its relevance should be presumed, and sanctions are warranted. *See, e.g., Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *Pension Committee*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

5

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC

Dated: January 3, 2012

LOEB & LOEB LLP
MICHAEL L. MALLOW
MICHAEL A. THURMAN

By: /s/ Michael A. Thurman
    Michael Thurman
    Attorneys for Defendants
    LIGHTS OF AMERICA, INC., USMAN VAKIL and FAROOQ VAKIL

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2193772.1
216835-10001

6

SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS AGAINST FTC